# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

David W. Lynas, as Trustee for the next-of kin of James C. Lynas,

                   Plaintiff,

v.

Linda S. Stang, *et al.*,

                   Defendants.
_____

Civ. No. 18-2301 (JRT/KMM)

**PETITION FOR APPROVAL OF SETTLEMENT DISTRIBUTION**

      Pursuant to Rule 144 of the Minnesota Rules of Practice – District Courts and Minn. Stat. § 573.02, David W. Lynas ("Plaintiff"), as the trustee for the heirs and next of kin of James C. Lynas, states and alleges for his Petition herein:

      1.     James C. Lynas ("James"), deceased, was born on October 10, 1986, in Buffalo, Minnesota.

      2.     James died on November 12, 2017, at Mercy Hospital due to a November 9, 2017, hanging at the Sherburne County Jail located in Elk River, Minnesota.

      3.     I am James's father.

      4.     I was appointed trustee by Order of Sherburne County District Judge Brianne Buccione on December 21, 2017. A true and correct copy of the Order is attached hereto as Exhibit A.

      5.     After being appointed Trustee, I retained Robert Bennett and the Gaskins Bennett LLP civil-rights team (who have since joined Robins Kaplan LLP ("Robins

Kaplan")) to help my family through the steps required to vindicate my son's civil rights and recoup pecuniary loss on behalf of James's heirs and next of kin.

6. The civil-rights team at Robins Kaplan is staffed with very experienced trial lawyers who, in connection with and separate from their civil-rights work, routinely handle wrongful-death cases of various types, as well as cases involving catastrophic injuries. The head of the civil-rights team, Robert Bennett, represented the families of Justine Ruszczyk, Philando Castile, and Abbey Taylor, who died as a result of a traumatic evisceration at the kiddie pool at the Minneapolis Golf Club, and was one of the lead trial counsel for the Consortium on the I-35W Bridge Collapse. Mr. Bennett and his team have numerous multi-million dollar verdicts and settlements to their credit and are competent, effective lawyers well-suited to prosecute cases such as this one.

7. The Robins Kaplan civil-rights team have particularized experience in Section 1983 cases involving jail suicides. Most recently, the team was involved in *Huber v. Todd County, et al.*, Civ. No. 18-2317 (NEB/LIB) (settled for $1.8 million); *Benais v. Cass County, et al.* (pre-suit) (settled for $2 million); *Baxter-Knutson v. Stearns County, et al.*, Civ. No. 14-3796 (ADM/LIB) (settled for $1.45 million); *Kucera v. Koochiching County, et al.*, Civ. No. 14-4218 (SRN/LIB) (settled for $2 million). Robert Bennett, Andrew Noel and Kathryn Bennett received the Attorney of the Year award for their work in the *Kucera* matter. Further, I understand that the team has numerous additional jail-suicide cases that are currently under investigation or in-suit.

8. In the three years since James's death, Robert Bennett and the Robins Kaplan civil-rights team worked diligently on this case. They worked with me to piece together the

events that led to James's November 9, 2017 hanging at the Sherburne County Jail, and helped expose multiple failures of the Sherburne County Jail and its contracted medical provider, MEnD Correctional Care, PLLC ("MEnD").

9. My counsel's analysis and work included the following:

   a. Obtaining, dissecting and analyzing all available records regarding James's time at the Sherburne County Jail, which proved to be much more difficult and problematic due to belated production of very pertinent materials;

   b. Researching policy and procedure issues at the Sherburne County Jail and with MEnD;

   c. Identifying, retaining and consulting with nationally recognized experts to both state and prosecute the case, including Lindsey Hayes (regarding correctional policies and protocols) and Dr. Ronald Groat (regarding correctional medicine);

   d. Drafting of a 33-page Complaint that was filed in this Court on August 7, 2018;

   e. Drafting of a 46-page First Amended Complaint that was filed in this Court on July 18, 2019;

   f. Legal research on many issues, including:

      i. Support for Plaintiff's motion to strike irrelevant and inapplicable affirmative defenses;

      ii. Support for Plaintiff's position on several discovery disputes;

      iii. Support for the opposition to two summary-judgment motions brought by the defendants; and

      iv. Verdicts, settlements, and damages.

  g. Preparing for and taking 16 depositions, several of which had to be redone because of the discovery production issues and ultimately proved critical to opposing both sets of defendants' summary-judgment motions;

  h. Preparing for and defending 3 depositions of James's family members, including myself;

  i. Engaging in significant motion practice regarding the motions listed above, including drafting a 93-page opposition memorandum to the defendants' motions for summary judgment;

  j. Frequent consultation with the collective civil-rights team regarding MEnD, Sherburne County, and additional incidents under their watch (including another suicide by a federal detainee in the same manner and in the same cell where James hanged himself);

  k. Drafting a detailed settlement conference submission; and

  l. Engaging in lengthy settlement discussions both at the settlement conference and before and after said conference that culminated in a global settlement.

10. The above-described process necessitated an intense, all-hands-on-deck approach. Simply put, this has been a hard-fought case.

11. Further, my attorneys kept me informed of the activities, strategies, tactics and negotiations on a timely basis. They provided explanations for these facets of the case and answered all of my questions in a timely and prompt manner. My attorneys have also informed me of the fiduciary nature of my role, with duties to all the next of kin, and have aided me in the performance of those duties.

12. Almost exactly three years after James's death, the parties engaged in a day-long settlement conference with Magistrate Judge Menendez.

13. At that settlement conference, Plaintiff reached a settlement with the Sherburne County Defendants, only, in the amount of $1,300,000.00. As is the case with public entities, this settlement was undeniably public and is not confidential.

14. Following the conference with Judge Menendez, settlement discussions between Plaintiff's counsel and counsel for the MEnD Defendants continued in earnest. After several rounds of demands and offers, Plaintiff reached a settlement with the MEnD Defendants in the amount of $1,000,000.00, and the MEnD Defendants abandoned their requirement that the settlement be confidential. That the entire settlement be public was very important to me.

15. In total, then, Plaintiff has settled all claims in this case for $2,300,000.00, without any requirement of confidentiality.

16. I believe that my counsel obtained an excellent result in this action and has earned the 45% fee plus costs, which is the percentage Plaintiff agreed to in the Retainer Agreement. The legal fee itself was $1,035,000.00. The costs were $77,604.69, totaling $1,112,604.69 to be paid to Robins Kaplan for attorneys' fees and costs.

17. This fee in my judgment is reasonable and in accordance with the factors set out in Rule 1.5 of the Minnesota Rules of Professional Conduct, which my attorneys have fully explained to me. I understand that eight factors to be considered are:

1. the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
2. the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
3. the fee customarily charged in the locality for similar legal services;
4. the amount involved and the results obtained;
5. the time limitations imposed by the client or by the circumstances;
6. the nature and length of the professional relationship with the client;
7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and
8. whether the fee is fixed or contingent.

18. Of particular importance to me in determining reasonability were factors 1, 3, 4, 6, 7 and 8.

19. With regard to factor number 1, the Robins Kaplan civil-rights team had the skills to perform the services properly and the ingenuity to deal with the difficulties presented in § 1983 lawsuits – particularly jail-suicide cases. Few lawyers in Minnesota have done so successfully once, let alone a number of times. The Robins Kaplan team has done so numerous times, as stated above.

20. Further, I understand that civil-rights cases are complex and difficult. As Your Honor previously wrote, "Indeed the Supreme Court has compared the complexity of civil rights litigation to antitrust litigation." *King v. Turner*, No. 05-CV-388 (JRT/FLN), 2007 WL 1219308, at *1 (D. Minn. Apr. 24, 2007). In *Madison v. Willis*, No. 09-930 (DWF/AJB), 2011 WL 851479, at *2 (D. Minn. Mar. 9, 2011), United States District Judge Donovan Frank was complementary of the Robins Kaplan civil-rights team, stating: "it is likely that [plaintiff's] success was due at least in part on the composition of the legal staff and their consultation with each other."

21. With regard to factor number 3, I determined that a 45% contingent fee was certainly not atypical for such representation in this difficult and specialized area and agreed in writing to such a fee at the outset of the litigation. I have been informed that the Robins Kaplan civil-rights team's standard contingent fee is 45% in correctional-misconduct cases.

22. With regard to factor number 4, I believe that the $2.3 million settlement is an excellent result given the difficulty of these types of cases and the past settlements obtained in similar cases in Minnesota, noted above in Paragraph 7.

23. With regard to factor number 6, I was well represented and counseled throughout this entire matter, even during times of emotional distress and turmoil over the loss of my son.

24. With regard to factor number 7, I believe now, as I did when I hired Robert Bennett and his team, that I was hiring people with vast experience, fine reputations and excellent ability to perform the legal service for me. Their abilities and successes are chronicled, in part, in paragraphs 6 and 7 above.

25. With regard to factor number 8, the fee was contingent.

26. The following are James's known heirs and next of kin:

   a. N▮▮▮ M. L▮▮▮ (minor daughter)
      Age: 10
      240 Marvin Elwood Road
      Monticello, MN 55362

   b. David W. Lynas (father)
      Age: 55
      13919 Benson Road
      Grantsburg, WI 54840

   c. Jeri Ann Holmberg (mother)
      Age: 54
      5245 Edinburgh Way
      Big Lake, MN 55309

   d. Sharron A. Lynas (grandmother)
      Age: 78
      1822 Meadowvale Road, #101
      Elk River, MN 55330
      Sharron's consent will be signed by David W. Lynas, who has power of attorney for Sharron, his mother, due to dementia.

   e. Charity Anne Brown f/k/a Shaffer (half-sister)
      Age: 40
      9127 State Highway 25 NE, Lot 10
      Monticello, MN 55362

27. No other heirs or next of kin – defined by Minnesota law as surviving spouse, children, parents, grandparents and siblings – have notified me in writing or otherwise of a claim for pecuniary loss, nor am I aware of any such claim or potential claim.

28. I have agreed to indemnify and/or hold the Defendants harmless against any claims brought by individuals claiming to be James's heirs or beneficiaries for any claims for loss related to James's November 12, 2017 death and the events precipitating his death.

29. Although no lien has been asserted for medical care during the pertinent time period – James's incarceration at Sherburne County Jail from November 1, 2017 to November 9, 2017 – I am now informed that certain health-care costs for James were paid by Blue Cross/Blue Shield of Minnesota on behalf of Minnesota Medical Assistance. My attorneys have agreed to satisfy any liens arising out of such medical care from the amounts paid to them.

30. N███ M. L███ ("N███") resides with her mother, Nicole Schaaf ("Nicole"). Her mother is not a next-of-kin of James but receives his social-security benefits for raising N███. Given the vagaries of Nicole's living and work situations, it was my judgment, after consulting with Robert Bennett and our structured-settlement consultant Ann Marie VonBank, that it would be prudent to arrange and provide for a means to help supplement the funds necessary to raise N███ while incentivizing Nicole's ability to work. The mechanism that we selected was a structure that will provide periodic payments in the amount of $690.00 per month for 7 years and 6 months until N███ age of majority (as outlined below), that will be used for N███ best interests during that time period. It is my view as trustee and N███ grandfather that I can administer and provide for my granddaughter's well-being during this term in such a way as to ensure that these monies are used for N███ benefit and not for any other purpose.

31. Accordingly, Plaintiff requests that the Court approve distribution of the remaining $1,187,395.31 in net proceeds following entry of the Court's Order:

   a. $126,197.66 to James's father, David W. Lynas;

   b. $126,197.65 to James's mother, Jeri Ann Holmberg;

c. $50,000.00 to James's half-sister, Charity Anne Brown f/k/a Shaffer; and

d. $885,000.00 to USAA Annuity Services Corporation by MEnD's insurer Ironshore Specialty Insurance Company ("Ironshore") to fund a structured settlement annuity that will provide future periodic payments, as follows:

PAYEE: David Walter Lynas FBO N█████ M. L███

$690.00 per month for seven (7) years and six (6) months (90 payments) guaranteed, commencing 3/1/2021, with the last guaranteed payment on 8/1/2028.

PAYEE: N█████ M. L███

$3,298.82 per month for seven (7) years (84 payments) guaranteed, commencing 8/18/2028, with the last guaranteed payment on 7/18/2035; $100,000.00 guaranteed lump sum payment on 8/18/2034; $150,000.00 guaranteed lump sum payment on 8/18/2037; $200,000.00 guaranteed lump sum payment on 8/18/2040; $250,000.00 guaranteed lump sum payment on 8/18/2042; and $300,000.00 guaranteed lump sum payment on 8/18/2045.

Any payments to be made after the death of N█████ M. L███ shall be made to David Walter Lynas (primary beneficiary), if living, otherwise to Jeri Ann Holmberg (contingent beneficiary), if living, otherwise to Charity Anne Brown (tertiary beneficiary), if living, or to such person or entity as shall be designated in writing by N█████ M. L███, upon reaching the age of majority.

No payee shall have the right or power to sell, mortgage, encumber, or anticipate the periodic payments provided for above or any part thereof, by assignment or otherwise.

The obligation to make the periodic payments described herein will be assigned by Ironshore under the meaning of IRC Sec. 130, to USAA Annuity Services Corporation (the "Assignee") and funded by an annuity contract issued by USAA Life Insurance Company (the "Annuity Issuer").

32. I, by and through my counsel, have contacted the aforementioned heirs and next of kin and provided them with a copy of this Petition and sought their consent to the same.

33. Each of the aforementioned heirs and next of kin have provided their consent. A copy of the Declaration and Consent of each is attached to this Petition as Exhibit B.

34. As all heirs and next of kin have provided their consent, I request that the Court approve the final distribution without a hearing. In the event the Court desires a hearing, I respectfully request that it be scheduled as expeditiously as possible.

35. I am not seeking any fees or costs for service as Trustee, but I would request that the Trusteeship be concluded after N▮▮▮ reaches majority.

36. By signing below, I verify that I have read and understand the contents of this pleading and that the averments herein are true of my own knowledge.

WHEREFORE, Plaintiff prays for an Order of the Court as requested above.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on the 16th day of DECEMBER, 2020.

_____
David W. Lynas, as Trustee for the next-of kin of James C. Lynas

Dated: December 16, 2020

**ROBINS KAPLAN LLP**

_____
Robert Bennett, #6713
Andrew J. Noel, #322118
Kathryn H. Bennett, #0392087
Marc E. Betinsky, #0388414
800 LaSalle Ave, Suite 2800
Minneapolis, MN 55402
Telephone: 612-349-8500
rbennett@robinskaplan.com
anoel@robinskaplan.com
kbennett@robinskaplan.com
mbetinsky@robinskaplan.com
*Attorneys for Plaintiff*